PAYNE AVENUE STATE BANK v. FLOYD B. JOHNSON.[1]

March 19, 1926.

No. 25,136.

**Note given for partial loss from forgeries without valid consideration, when cause of action for loss had been released.**
    1. Action on a promissory note given by the decedent for a part of the loss resulting from forgeries of one Hanscome. The cause of action arising out of the forgeries having previously been released and discharged, there was no valid consideration for the note.

**Whether consideration was illegal agreement not decided.**
    2. Whether the consideration was an illegal agreement to suppress evidence of the crime, it is not necessary to determine.

Appeal and Error, 4 C. J. p. 649 n. 36.
Bills and Notes, 8 C. J. p. 220 n. 85.

[1]Reported in 208 N. W. 15.

The Payne Avenue State Bank filed in the probate court of Nicollet county a claim upon a note of $8,000 against the estate of Miles B. Johnson, deceased. On appeal from the probate court to the district court pleadings were framed, and the appeal was tried before Gislason, J., and a jury, as an action by the plaintiff against Floyd B. Johnson, as administrator of the deceased, upon the note. There was a verdict for the defendant and the plaintiff appealed from the order denying its alternative motion for judgment or a new trial. Affirmed.

*Todd, Fosnes & Sterling* and *Richard Converse*, for appellant.
*M. E. Stone* and *Somsen, Dempsey & Flor*, for respondent.

TAYLOR, C.
    C. M. Hanscome was the cashier of the Farmers & Merchants State Bank located at Nicollet in Nicollet county. E. E. Larson, a brother-in-law of Hanscome, was president of the plaintiff bank

located in the city of St. Paul. From time to time during a considerable period, the Nicollet bank, through Hanscome as its cashier, had sold and transferred quantities of commercial paper to plaintiff. In January, 1923, Larson learned that Hanscome had forged many promissory notes to the Nicollet bank, and then as cashier of that bank had sold these forged notes to plaintiff to an amount exceeding $60,000. Larson and two other directors of plaintiff bank, one of whom was its attorney, immediately went to St. Peter near Nicollet where they had a conference with Hanscome and the directors of the Nicollet bank. As the result of this conference, the seven directors of the Nicollet bank executed an instrument in which they personally guaranteed to plaintiff payment of all the paper held by plaintiff which it had received from Hanscome as cashier of the Nicollet bank, including both the forged notes and the valid notes. Hanscome conveyed to a committee of three selected by the banks all his property, including his homestead, to be applied on the liability resulting from his forgeries. His mother also conveyed her homestead to this committee. As a part of this transaction, plaintiff agreed to bring no action on the forged paper against either Hanscome or the Nicollet bank.

Miles B. Johnson was a brother-in-law of Hanscome's mother. He was in business at St. Peter, but at the time of this occurrence was in Florida. His son Floyd B. Johnson was left in charge of the business. At the settlement between plaintiff, Hanscome and the directors of the Nicollet bank, it was suggested that Hanscome's relatives might be willing to help make up the loss from his forgeries. On the day following this settlement, Larson and the attorney for the plaintiff bank called Floyd B. Johnson to the home of the senior Mrs. Hanscome and informed him of the forgeries, of which he seems to have had no previous knowledge, and asked if he and his father would help make up the loss. They explained what had been done the day before and that no action would be brought against either Hanscome or the bank on the forged paper. He expressed a willingness to help to the extent of his ability, but said he could not obligate his father who was in Florida, and asked

time to communicate with him. They replied that they could not carry the forged paper among their assets and must replace it at once, and asked for a note for $10,000. Floyd said that $2,000 was the utmost that he could assume personally, but that his father might assume the other $8,000. As a result of the conference Floyd signed a note for $10,000, but took back a written agreement that he was to be held personally for only $2,000 thereof. He wrote a lengthy letter to his father explaining the situation. One of the directors of the plaintiff who was about to go to Florida on business of his own was given this letter and delivered it to Miles B. Johnson in Florida. After some further correspondence, Miles B. Johnson executed his note for $8,000 and mailed it to Floyd. On receiving it Floyd executed his own note for $2,000 and mailed both to plaintiff and plaintiff then returned to Floyd the note for $10,000 which he had previously signed. Subsequently Hanscome was arrested, convicted and sentenced to a term in prison.

Miles B. Johnson died in November, 1923, and his son Floyd was appointed administrator of his estate. The note was filed in the probate court as a claim against the estate. An appeal from the order of the probate court brought the claim before the district court where pleadings were made up. The defendant admitted the execution of the note, but interposed two defenses: First, that the note was without consideration; second, that the consideration, if any, was an illegal agreement to prevent a criminal prosecution. Both defenses were submitted to a jury who found for the defendant. Plaintiff appealed from an order denying its alternative motion for judgment or a new trial, and contends that the evidence will not justify a finding that there was no consideration for the note, nor that the consideration was an illegal agreement to suppress a criminal prosecution.

1. Plaintiff claims that it forbore to sue on the forged notes and granted an extension of time, and that this constituted a consideration for the note in controversy. That this claim cannot be sustained is clear from the conceded fact that, as a part of the transaction in which the directors of the Nicollet bank became person-

ally liable for all the paper and Hanscome and his mother turned over all their property, plaintiff had agreed to bring no action against either the Nicollet bank or Hanscome on the forged paper. This agreement was made for a full and valuable consideration, and by it plaintiff released and discharged the parties previously liable for the loss on the forged paper. Heitsch v. Cole, 47 Minn. 320, 50 N. W. 235; Walther v. Briggs, 69 Minn. 98, 71 N. W. 909; First Nat. Bank v. Gallagher, 119 Minn. 463, 138 N. W. 681, Ann. Cas. 1914B, 120; 34 Cyc. 1042, 1077. This agreement between plaintiff, Hanscome and the directors of the Nicollet bank was made and completed before the negotiations with the Johnsons were initiated, and was in no way made conditional upon any action on their part. The Johnsons were not concerned or interested in either bank. Plaintiff's forbearance in not enforcing its cause of action against Hanscome or the Nicollet bank growing out of the forgeries furnished no consideration for the Johnson notes, for plaintiff had already surrendered and relinquished that cause of action.

It is claimed that the consideration for the notes was an illegal agreement to suppress evidence of the crime. Whether such an agreement was or was not made, the notes were undoubtedly given in the hope of averting a criminal prosecution. Whether the evidence was sufficient to make the question of the illegal agreement a question for the jury, it is not necessary to determine, for it conclusively appears from the conceded facts that there was no other consideration for the notes.

There being no valid consideration for the notes, the verdict was correct and the order is affirmed.